The first case that we have for argument this morning is Colorado Wild Public Lands v. United States Forest Service. It is docket 25-1055. Counsel please proceed when you're ready. Thank you, Your Honor. Jeff Parsons on behalf of Appellants of Colorado Wild Public Lands and San Juan Citizens Alliance. With me at counsel's table is Travis Stills, who aided on the briefs and in preparation for the argument. I intend to reserve about two minutes for rebuttal. This case is a challenge to a final federal agency action, and as such, it is subject to the standard of review under the Administrative Procedure Act, 42 U.S.C. 706-2A. And that is the administrative action and the agency's action must be, may not rather be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. As far as arbitrary and capricious, courts find arbitrary and capricious where the agency failed to consider important aspects of the problem, offered an explanation for its decision that runs counter to the evidence, and failed, or failed to base its decision on consideration of relevant factors. We believe there are problems with the agency's analysis that run afoul of these standards for arbitrary and capricious. We also believe that the decision was not in accordance with the National Environmental Policy Act, NEPA, and the Federal Land Policy and Management Act, FLPMA. With respect to the APA violation, the NEPA analysis in this case, the environmental assessment, was based on an assumption of a full development of a fenced-in commercial elk farm. And this is a land exchange case, and so the land that was to be traded to the public, this is the plan that the NEPA analysis based its assessment on, that this land essentially was going to be rendered unusable for wildlife to the detriment. It's about an 880-acre parcel of land which is identified as having good elk habitat. So that was the premise that the NEPA document used. However, in the appraisal, which is a fundamental component of the land exchange process, the appraisal doesn't mention a fenced-in elk farm, doesn't address that issue. We think that's a serious disconnect that was never addressed by the agency. In addition, what we found in the appraisal, and this gets a little complicated, the appraisal documents in this case were deliberately withheld from the public. There was a separate lawsuit in the District of D.C., a FOIA case, brought by the appellant, Colorado Wild Public Land, that found that the Forest Service illegally failed to disclose that appraisal document. And so throughout the entire public review period, the public was unable to look at that and compare or assess or evaluate the appraisal document. Counsel, let me ask you, is there something in the appraisal that you think was missing? Or is it just the fact that it wasn't timely disclosed? Thank you, Your Honor. I do think, I think under the NEPA, not in accordance with law, the fact that they didn't disclose it and didn't allow the public to review it is a serious problem. With respect to the APA and this failure to reconcile and base the decision on relevant factors, what we found important was that in the appraisal, the appraisal discusses the regulatory authority that the Forest Service has over this development on that private land, and it has a road access permit. And so the EA, the NEPA document, doesn't divulge that, doesn't discuss the Forest Service's authority over that development, and just assumes that it will, essentially as a foregone conclusion, that it will be developed into this fenced-in commercial oak farm. In fact, in the record, in the decision notice, the final agency action here, the agency cites as the primary reason for approving the land exchange includes the fact that it was to fend off the impacts that would occur from the commercial oak farm. And so it based its decision on that without acknowledging the potentially substantial control that the Forest Service also had over the development on that parcel. And that failure to reconcile, that failure to describe and explain how those two line up, we think rises to a violation of the Administrative Procedure Act, because it failed to consider an important aspect of the problem. When you say it, you mean? The agency. Okay. But going back, I don't want to, I'm just trying to, the appraisal was featured so much in the briefing. I just want to make sure I understand the import of what the issue that you see with it is. Because as I understand the regulations, the regulations only speak to sort of a, and I'm paraphrasing and shortening, but a market evaluation of the property at issue. And so it seems like you're asking for something more than that, suggesting that there should be something more that was in the appraisal that wasn't there, if I understand you. Well, I think this gets to sort of the NEPA violations as well. I mean, there's definitely some overlap. But if I may, I think the discussion of the NEPA issues go to that directly. And in this case, it's the failure to allow the public to review and comment on these appraisals as part of the NEPA analysis was a violation of NEPA. The cases from the Supreme Court and the Tenth Circuit make it very clear that agencies are to comply with NEPA, quote, to the fullest extent possible, citing the statute. The Richardson case out of the Tenth Circuit in 2009, I think is important. The language there, at all stages throughout the process, the public must be informed and comments considered. And then the Utah Shared Access Alliance. Can you point to any cases, though, that really would somehow require them to have allowed the public access voluntarily without the FOIA request to this appraisal? So that's a step further than any of these cases that you're citing. Well, the fact that the appraisal under FLTMA, the appraisals are required to include an evaluation. Well, I know what the appraisals are required to include. I'm asking something else, which is what what are you looking to to support your suggestion that somehow these appraisals were required to be made available to the public? It's because I just don't see any support for that. Thank you. It's because the appraisals contain critical information that inform the NEPA process. The appraisal regulations talk about including assessment of the historic wildlife, recreation, wilderness. In the appraisal? In the appraisal. I'm talking about disclosure. I'm not talking about what goes in the appraisal. What supports your suggestion that it was mandatory, essentially, to disclose the appraisal for public comment? That's two different things. Understood. Excuse me. It's because the twin aims of NEPA are informed decision making and public involvement. And again. That's a policy. But just looking at the language, the text of the statute and the regulation, it speaks about receipt of the appraisal by parties to the exchange. It doesn't talk about the public for comment. Understood. Under NEPA, it requires compliance with NEPA to the fullest extent possible. And NEPA, again, those twin aims. And then the Richardson case, talking about at all stages throughout the process, the public must be informed and its comments considered. And so if you have a critical component like the appraisal that's going to get into all these issues of historic wildlife, recreation, notably very similar, the same issues that the NEPA analysis is intended to develop and you're excluding the public from that, you're depriving the public of that ability to be fully informed and to offer comments to the agency. So while I understand that FLIPMA doesn't expressly say, thou shalt make this available to the public, NEPA effectively does. And because of the importance of the appraisal to the NEPA review, and in this case, again, we found in the appraisal information that demonstrates that the agency in the NEPA document did not assess, did not look at all relevant factors. You mentioned a D.C. Circuit case. Is that the holding of that case? And can you give us a site, if so? I'm sorry. I mentioned a District of D.C. FOIA case. Is that what you? Well, I thought that you were citing saying you had authority for the proposition that you're not giving us. Beyond it makes sense. And if you extrapolate. I was referring to the NEPA case law. Robertson versus Methow Valley talks about to the maximum, fullest extent possible. The Richardson case in the 10th Circuit says at all stages throughout the NEPA process, the public must be informed. And then the Utah Shared Access Alliance says that agencies must use a systemic, interdisciplinary approach in its decision making. And so where you have a critical document like the appraisal, that is part of that interdisciplinary analysis and the public has to be informed. Again, we found we found issues in the appraisal that color and affect the NEPA analysis that were never addressed. And so that's where that all comes together. There was a case called Pagosins for Public Lands. And I understand it didn't rise to the level of the 10th Circuit. It was quoted, cited and quoted in our in our briefs. 2007 Westlaw 506 1698. And it does say that remarks about the importance of the appraisals to the NEPA study and the public's involvement in that NEPA study. So I think that that's a Are you suggesting that are you asking us to hold that essentially any time there's an appraisal involved, it must be disclosed without a FOIA request anytime? I think what I'm saying is that in a land exchange process, that the appraisal is a critical component. And because it also overlaps with the evaluation of the wildlife and the scenic areas and the cultural resources, because that's part of the appraisal process and is necessary for the public to effectively evaluate the NEPA process and participate to the fullest extent possible as mandated by the statute and interpreted in the case law. So the short answer is yes. Kind of inconsistent with with Shoup? So Shoup is a troubling case for us, certainly. Can you address that for me? Well, I think that in Shoup it was a there was the record in that case was not it was not evident in that case based on the record that you had this overlapping, that you had issues that came up in the appraisal that affected the NEPA document. So I think on that basis, it's distinguishable because the record in this case demonstrates that overlap. I also think that in this case, as we put it in our briefing, we do make a fair argument with respect to the public interest requirement and not just the equal value. Now, of course, I think the equal value encompasses all those components of cultural resources, et cetera. But Shoup was could be distinguished on the basis that it did not address the public interest requirement. Otherwise, well, Shoup definitely stands for the proposition that a FOIA violation doesn't mean a NEPA violation. And that seems to be what you're kind of pushing us towards. I'm not saying that. I want to make sure I understand that. I think that I think that that was an unfortunate circumstance here. I think it demonstrates that these these appraisals are public information. So withholding them until after the decision is made is not is not legal under FOIA. And I think that does color this aspect of if they're allowed to withhold very briefly with respect to the FLTMA violations and this appraisal of market value. I would encourage this court to look closely at the Shoshone-Bannock case, which addresses this issue of what the market is and whether an agency can exclude one party or in this case, any adjacent landowner from the market in in conducting its market analysis. And I think the Shoshone-Bannock case, while it did not rise to a Ninth Circuit case, does have a very persuasive and compelling analysis that the court should review. With that, I would like to reserve the remaining time. Yes. Thank you. Judge Philips, may I ask a follow up question? I'm sorry, counsel, with the Judge Philips' indulgence, just a quick follow up on something. So in your reply, you really didn't address the FONSI issue again. Have you abandoned that argument? No, Your Honor. At the at the end of the reply brief, we go into this distinction between the EIS and the EA. And there is a discussion in the in the reply brief. I mean, it's raised in the opening and then it's discussed in the reply. The regulations implementing NEPA have largely been gutted within the last year. What happens if we granted your proposed remedy? Well, the agency would would be required to ensure that any decision it makes in the future complies with the Administrative Procedure Act and NEPA. And I will say that although the regulations were withdrawn, the statute itself still provides solid basis for all of the arguments we're making here today. All right. Thank you. Thank you. Thank you. We'll give you 16 minutes because I intend to give counsel a minute of rebuttal. May it please the court, Jason Lee for the Forest Service. I'd like to reserve three minutes for intervener's counsel. The Viasseco parcel is a private inholding completely surrounded by National Forest System lands. Beyond the land's ecological value as habitat for elk and mule deer and a valuable migration corridor for big game, not having ownership and control over that parcel has raised a host of challenges for the service for many, many years. Among other things, it has impeded the service's ability to access forest system lands around the parcel. Plaintiffs here challenge the land exchange under FLIPMA and NEPA. But as the district court held, their arguments lack merit. I'd like to start with some of the questions that the panel has brought up about disclosure of the appraisals. As the panel has rightly noted, there is no statutory or regulatory basis requiring disclosure of the appraisals. And as I understand, my friend on the other side, his argument is really a functional one, that plaintiffs and other people like them need the appraisals in order to be able to comment meaningfully on the agency's NEPA analysis. And that's wrong for at least two reasons. First, as Judge Moritz noted and Judge Garcia, there's nothing in the appraisals that is relevant for NEPA and wasn't also disclosed in the agency's draft EA. In fact, if you look at our brief on page 57, we specifically note that all of the types of information that plaintiffs say they needed that were available in the appraisals were also set forth in the draft EA. So they can't show they were deprived of any relevant information that they needed to comment under NEPA. And I haven't heard anything different today. They do raise one point in their reply on pages 16 and 6. They say the appraisal, the appraiser somehow suggested that development as an elk farm and a hunting lodge was unlikely. The appraiser said that. They said that development was unlikely. And that's why we needed the appraisals. Now, that is a complete mischaracterization of what the appraiser said. The appraiser was not talking about development as an elk farm and hunting lodge. The appraiser was talking about subdivision of the VIA SECO parcel into tracks smaller than 35 acres. And the appraiser said, if you did that, you would have to improve this service road and make it an all weather road. And it was unlikely the service would permit improvement of the road to that extent. So that's what the appraiser was talking about. So we have nothing either in the public interest determination or the appraisals themselves that's relevant under NEPA and wasn't disclosed. And for that reason, they weren't deprived of any information that's relevant to the NEPA analysis, even if they had identified such information. Any error would be harmless because they haven't shown how their public comment on the draft EA would be any different. And without any difference, having that information, it's quintessential harmless error. Does it matter what this landowner wanted to do with the land? I mean, if there's no outside indication that anybody else was interested in the property, does it matter what the unilateral intentions were of this one person? Sorry, go ahead. No, Your Honor, the appraiser only had an obligation to determine what the highest and best use of that parcel is. And as explained in the appraisal, the highest and best use of a property is going to coalesce around what there is market demand for. And so there's two problems with plaintiff's argument along this line. First, they suggest the appraiser should have considered whether or not development of the hunting lodge and elk farm would have gone forward. They can't show as an initial matter that that was a higher or better use than creation of multiple residential seasonal home sites. That's what the appraiser said is the highest and best use. They don't explain why this elk farm would have been a higher, better use. That's a sufficient basis on which to reject this argument. But as an additional basis, they can't show public demand. They can't show in the record that anyone else was interested in development as an elk farm. Their obligation is to show that the agency's decision making was arbitrary and capricious, and they haven't put forth any basis on which this court could make that conclusion. Relatedly, they do raise questions about this is pertaining to their argument that the valuations of the federal land, whether or not, you know, the agency's market value determination for those parcels that lack public access, whether or not they were correctly valued. And they challenged the Forest Service reliance on takings case law. So I just want to make clear that takings case law is directly relevant under FLCMA. Agency regulations require compliance with the Yellow Book and the Yellow Book incorporates the just compensation standard. And so for that reason, all just compensation case law is directly relevant under FLCMA. Under those cases, including the United States versus five hundred and sixty four acres case that's cited in our brief, the only thing that can factor into the market value determination is generally transferable value, value that could be transferred from one owner to another. And so to the extent that they're saying, look, the fact that these federal parcels lacked public access and you discounted their value, that's error, that's an incorrect argument under the case law. Whether or not consolidation with with private land that would have had public access, whether or not that or that consolidation value is not generally transferable, for example, if you have private land and federal land, that private owner, if they bought the federal land, but then put it up for sale again, that any consolidation value with their own land would have been destroyed. And so for that reason, it's the value that that land would have had on its own, absent consolidation, because that turns, consolidation turns on how a particular buyer is situated. It's individualized, not general. And the land sales data that was cited in the appraisal backs that up. When the appraiser. Well, let me ask you, so what I even the Shoup decision sort of characterized the Forest Service's untimely disclosures of the appraisal, smacked of secrecy, I think was that I mean, are you are we supposed to disregard the untimely disclosures? Are we supposed to ignore that fact altogether for purposes of this argument? I'd like to clarify one thing. So the disclosures were not untimely under either FLTMA or NEPA because there's no basis on which it should be disclosed. There was a FOIA case and that FOIA case, whether or not the appraisals were timely disclosed in response to a FOIA request is not before this court. So there's I would just slightly quibble with the premise that the disclosures were untimely. But regardless, plaintiffs haven't identified any information that they needed that was only in the appraisals that would have been required to meaningfully comment under NEPA. One thing I also heard from my friend on the other side was the idea that development as an elk farm and hunting lodge was speculative. Again, they can't show the agency's determination that development was reasonably likely. We know from direct communication to the Forest Service that there had been initial steps already taken to develop this parcel. There had been a permit obtained for a perimeter fence. There had been mapping to construct a power line to this parcel. They identified future steps that would have been taken. There would have actually been construction of the perimeter fence. A well would have been drilled. Design of this hunting lodge would have taken place. So there's more than a sufficient basis on which to find, to reject the arbitrary and capricious allegation by plaintiffs on this point. They also kind of conflate the FLTMA analysis with NEPA. What I understood them to say today was, look, under FLTMA, under NEPA, you said this hunting lodge and elk farm was reasonably likely, but you didn't consider it under FLTMA. So you did it under one statute, not under the other. There's no error in that because the two statutes are looking at different things. FLTMA is simply concerned on whether or not in the land exchange, the parcels to be exchanged have an equivalent value. So you have to look at the highest and best use. And here the appraiser determined the highest and best use was development of multiple residential home sites. But of course, owners don't have to pursue the highest and best use. And here, Boot Jack Ranch said, I'm going to develop this as a hunting lodge in an elk farm. So under FLTMA, the agency had to consider what were the likely environmental impacts of not going forward with this exchange and deciding what those what those impacts were of not going forward with the exchange. The agency said, OK, well, what will happen if this elk farm is built and this hunting lodge is built? So, yes, there were different premises underlying the agency's analyses. But that's because these two statutes serve distinct means and they go about it through different distinct purposes, through different means. The only other point that I affirmatively wanted to raise, although I'm happy to answer any of the panel's questions, is plaintiffs attempt to distinguish the case of Wyoming versus Department of Agriculture. This is their challenge to the modification of the Colorado roadless rules. So in that boundary modification that was approved, there have been two alternatives considered by the agency. One that would have expanded this roadless area by around 500 acres and another option that would have done it by 5,200 acres. The agency ultimately went with something in between 4,600 acres. And under this court's case in Wyoming versus Department of Agriculture, there was sufficient consideration of that pick in the middle, 4,600 acres. And that's because all Wyoming requires is that the agency's final choice be within the reasonable spectrum of alternatives that was considered. Here, that clearly happened. The agency considered the environmental effects of adding as few as 500 acres and as much as 5,200 acres. It went with 4,600 acres. That there's no error in that analysis. Now, what they say is, yes, but in Wyoming, what this court looked at is whether or not the lands that were added were of a similar characteristic. I'd like to explain why that analysis is not necessary in this case. In Wyoming, the agency had proposed adding around 52 million acres to certain protections by the rule that was being challenged. Fifty two million acres. And in the final EIS, the agency added another four million acres. They said, we're going to subject 56 million acres to this rule. And this court said, you didn't analyze those four million additional acres, but those four million additional acres, they're similar to the lands you did analyze, you did evaluate, and because those lands are similar enough to the lands you did evaluate, that's fine. It falls within the reasonable range of alternatives you considered. Now, here, what the agency did was even more clearly analyzed and evaluated because, again, as I said, the agency considered the impacts of doing, of adding as few as 500 acres, as much as 5,200. And it chose something in the middle, 4,600 acres. All of those 4,600 acres had been evaluated as part of the 5,200 acre option. So this this case, these facts clearly fall within Wyoming versus Department of Agriculture. The last thing, unless there was anything else this panel wanted to ask before I hand things over to Intervenors Council is I just wanted to emphasize how much of a win-win-win this land exchange is for the public and for the service. The service was able to obtain a valuable private inholding that was, you know, had an important migratory corridor for for wildlife. It was able to achieve consistent administration and management of all of the lands. It was able to improve its fire response capabilities. It was able to enhance public access to these lands, to the parcel itself and the surrounding lands. And it was able to enhance recreational opportunities for people that might come to visit. For that reason, it made complete sense for this agency to pursue this parcel and approve the land exchange. And none of plaintiff's arguments suggest that there was any arbitrary or capricious decision making this court should affirm.  Good morning. May it please the court. My name is Danielle DeMauro. I represent the intervenors at the lease who are the private proponents of the land exchange. If the land exchange occurs, nine small, relatively small scattered parcels would be transferred to private ownership from federal ownership and they would be joined with the ranches that are owned by the intervenors. These are longstanding ranches with a track record of stewardship of rural, agricultural and scenic values, and that includes conservation easements and forest agriculture management plans. Their plan would be to integrate these lands with their existing operations. And those include cattle ranching, conservation and some limited recreation. So these would essentially continue the existing uses of these parcels because several of them already have grazing permits that are administered by the Forest Service. Some have easements for use by these adjacent landowners for irrigation ditches and roads. So their plan is to continue these existing uses and stewardship of the lands. They would also, with respect to one of the parcels that has lands, six acres that are within a suitable wild and scenic river corridor, they would apply a conservation easement to protect those values. And there's nothing in the record that suggests that the planned uses of those parcels are inconsistent with the Forest Service's management of the nearby National Forest System lands. The interveners have cooperated with the Forest Service in this process. Per the agreement to initiate, they financially supported the Forest Service's work and studies on the project. And that's to offset the cost to the taxpayers of the Forest Service examining this proposal. But the process has been underway for over seven years, and the interveners are eager to see it completed. So unless you have questions for me, we would urge you to affirm. Thank you, counsel. Thank you. Counsel, you have one minute and we're a busy day today, so I'll hold you to it. I want to make sure you're absolutely just really just two quick components on on rebuttal with respect to the assertion that there was nothing in the in the appraisal that was new or was not addressed. That is not true in the appraisals where where they discussed the appraiser, and this was counsel's correct. It was in the context of dividing it into 35 acres or less. But the underlying premise is still the same, that the Forest Service has authority, permitting authority over that access to control what happens in terms of development on that land. And that was not addressed, not assessed in the environmental impact statement or excuse me, in the environmental assessment. And so that was a distinction that's worth taking note of. The other thing is with respect to the market analysis, saying that there is no there are no other buyers. What happened in the appraisal, they said the highest and best use is assemblage with an adjacent owner. There is record evidence that there is an adjacent owner, not Boot Jack Ranch at volume 10178. And the agency did not assess whether there were any other participants in that market. And there were. Thank you. Thank you. Thank you, counsel, for your helpful arguments and briefing. The case is submitted and counsel are excused. Thank you.